IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NUMBER 19-79-1 |
| | : | |
| MIGUEL CARRILLO- ZAMARRIPA | : | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Miguel Carrillo-Zamarripa, ("Mr. Carrillo"), submits this memorandum in aid of sentencing and respectfully requests this Court impose a sentence of time served. As calculated in the Presentence Report ("PSR"), the recommended guideline range is 0-6 months' incarceration. Mr. Carrillo stands before this Court having accepted responsibility for his actions and with a full understanding that he will be deported after serving the sentence imposed by this Court. He further understands that if he illegally reenters the United States in the future, he will face further prosecution and greater penalties in federal court. As such, he has no intention of illegally entering the United States again. Mr. Carrillo has been in custody on these charges since he was arrested by ICE agents at his home in the early morning hours of January 3, 2019. The defense respectfully submits that a sentence of time served is warranted considering all the 18 U.S.C. § 3553(a), and the considerations of *United States v. Booker*, 543 U.S. 220 (2005), discussed herein.

**I.      MR. CARRILLO'S  PERSONAL HISTORY**

Born Zacatecas, Mexico, Mr. Carrillo and his siblings were raised by both parents in impoverished circumstances. His parents' hard work provided the necessities to Mr. Carrillo and

his siblings. Mr. Carrillo attended school in Mexico until the sixth grade, and then began working to help support his family. The defendant and his family came together to the United States in 1977, seeking a life with more opportunities. The defendant found work in labor and construction industries and became a skilled carpenter and dry wall finisher.

Mr. Carrillo married Maria Guadalupe in 1980. Together they have two children for whom the defendant has always worked hard to provide. Ms. Carrillo and the children (now grown) are United States citizens. The defendant and his wife legally divorced in 2011, after he was deported to Mexico; never the less, they remain on good terms and she acknowledged that he is a good husband and father and a good provider. His son also describes him as a "good father and grandfather" who was always there for him growing up.

Though Mr. Carrillo has a sister who resides in Mexico with her husband and children, most of the defendant's family are citizens or legal residents and reside in the United States. They are free to travel to and from Mexico to visit him as they wish. Mr. Carrillo originally came to the United States as a teenager with his parents who sought greater opportunity and gainful employment. He made choices as a young man that stripped him of his legal status and took from him his ability to live freely in the United States. He knows that he must make a life for himself in Mexico. He plans to reside with his sister Maria Leonor, and her family, in Reynosa, Mexico. His own children are grown and employed, and raising families of their own. He well understands that they would rather that he be free in Mexico, than incarcerated in the United States, and will not jeopardize his freedom and his ability to maintain contact with them by returning to the United States.

## II. APPLICATION OF THE STATUTORY FACTORS TO THIS CASE

For all the reasons cited herein, a sentence of time served is sufficient to achieve the sentencing goals of 18 U.S.C. § 3553(a). While the crime of illegally reentering the United States is a serious felony, it much be noted that it is a non-violent crime. Mr. Carrillo came back to the United States to only work and support his family. He was arrested on January 3, 2019, when he was in his home, asleep, and was taken immediately into ICE custody. He has been in custody on these charges for more than six months, and will remain in custody until his eventual deportation. He well understands that if he enters the United States without permission at any point in the future, he will be subject to further incarceration. It is well-established that the *certainty* of punishment, not the *severity* of it, has the most significant general deterrent effect.[1] Mr. Carrillo entered the United States in this instance before the strict immigration policies of the current administration and heightened boarder security. With increased detection at the border and throughout the United States, there is a very strong likelihood he will be detected if he returns. This serves as a significant deterrence and as such, a sentence at the low end of the recommended guideline range is sufficient to deter Mr. Carrillo from returning in the future.

---

[1] *See*, *e.g.*, CESARE BECCARIA, ON CRIMES AND PUNISHMENTS AND OTHER WRITINGS 63 (Richard Bellamy, ed.; Richard Davis, trans., Cambridge University Press 1995) (1764); Frank H. Easterbrook, *Criminal Procedure as a Market System*, 12 LEGAL STUD. 289, 295 & n.7 (1983); Alfred Blumstein, *Prison*, *in* CRIME 387, 408-409 (Wilson & Petersilia, eds., 1995); Daniel S. Nagin & Greg Pogarsky, *Integrating Celerity, Impulsivity, and Extralegal Sanction Threats into a Model of General Deterrence: Theory and Evidence*, 39 CRIMINOLOGY 865 (2001); Michael Tonry, *The Functions of Sentencing and Sentencing Reform*, 58 STAN. L. REV. 37, 52-54 (2005); Raymond Paternoster, *How Much do we Really Know about Criminal Deterrence?*, 100 J. CRIM. L. & CRIMINOLOGY 765, 818 (2010) ("The safest conclusion from the literature thus far would be that the perception of certain legal and extralegal sanctions does seem to act as a modest deterrence factor, but that the perceived severity and celerity of punishment do not appear to be effective deterrents to crime, and we know virtually nothing about celerity.").

Additionally, no sentence this Court imposes will meet any vocational or educational needs of Mr. Carrillo. The presence of an immigration detainer will limit access to programs available to similarly-situated United States citizens, including literacy and English as a Second Language programs, as similarly-situated United States citizens. 28 C.F.R. § 544.51(b) ("Generally, inmates under orders of deportation, exclusion, or removal may participate in an institution's occupational education program if Bureau resources permit after meeting the needs of other eligible inmates"); 28 C.F.R. § 544.41(a)(3). In essence, Mr. Carrillo will only be permitted to participate in educational and occupational programs after all eligible United States citizen inmates are enrolled – an unlikely scenario considering budgetary restraints.

## III. CONCLUSION

Mr. Carrillo stands before this Court having accepted responsibility for his actions. He accepts his inevitable deportation to Mexico, where he will reside with family, and does not intend to reenter the United States in the future. His motivation to enter the United States was to work for the welfare of his family, and he fully recognizes he provides more for them if he is free and working in Mexico, rather than in jail in the United States. For all the reasons cited herein, as well as any which become apparent to the Court at the sentencing hearing, Mr. Carrillo respectfully requests this Court impose a sentence of time served.

Respectfully submitted,

*/s/ Elizabeth L. Toplin*
ELIZABETH L. TOPLIN
Assistant Chief, Trial Unit

# CERTIFICATE OF SERVICE

I, Elizabeth L. Toplin, Assistant Chief, Trial Unit Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I have electronically filed and served a copy of the Defendant's Sentencing Memorandum, by Electronic Case Filing and/electronic mail upon Sherri Stephan, Assistant United States Attorney, office located at 615 Chestnut Street, Suite 1250, Philadelphia, Pennsylvania 19106 and Brett A. White, United States Probation Officer, office located at William J. Green Federal Building, 600 Arch Street, Suite 2400, Philadelphia, Pennsylvania 19106.

*/s/ Elizabeth L. Toplin*
ELIZABETH L. TOPLIN
Assistant Chief, Trial Unit

DATE: June 24, 2019